UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FUTURISTIC BRANDS USA, INC., )
)
Plaintiff, )
)
v. ) Civil Action No.
)
LEADING BRANDS, INC., and )
RALPH McRAE, )
)
Defendants. )

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.     This case arises from an intentional and calculated course of conduct by the defendants to interfere with and destroy the ability of Futuristic Brands USA, Inc. to market its brand of energy drink, Mad Croc ™, in the United States and Canada. This conduct included acts of fraud and deception, interference with contractual relations, attempts to conceal assets from creditors, conversion, and the misuse of the corporate form to accomplish inequitable conduct. The conduct was controlled and directed by Mr. McRae based on his personal animus for one of the principals of Futuristic, Mr. Thomas Lines and in flagrant disregard of his corporate, legal, and fiduciary duties.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FUTURISTIC BRANDS USA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LEADING BRANDS, INC., and<br>RALPH McRAE,<br><br>Defendants. | Civil Action No. |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. This case arises from an intentional and calculated course of conduct by the defendants to interfere with and destroy the ability of Futuristic Brands USA, Inc. to market its brand of energy drink, Mad Croc ™, in the United States and Canada. This conduct included acts of fraud and deception, interference with contractual relations, attempts to conceal assets from creditors, conversion, and the misuse of the corporate form to accomplish inequitable conduct. The conduct was controlled and directed by Mr. McRae based on his personal animus for one of the principals of Futuristic, Mr. Thomas Lines and in flagrant disregard of his corporate, legal, and fiduciary duties.

## PARTIES

2.      Futuristic Brands USA, Inc. ("Futuristic") is a Delaware corporation with its principal offices in New York and Massachusetts. Futuristic is the exclusive licensee with the right to sublicense and distribute the Mad Croc ™ brand of energy drink.

3.      Leading Brands, Inc. (Leading Brands) is a Canadian corporation with its principal offices in Vancouver, Canada. Leading Brands is engaged in the bottling, distribution, sales, merchandising and brand management of beverage and food products throughout most of North America. Leading Brands of America, Inc. ("LBAI") is a Delaware corporation that was the Leading Brand's principal operating subsidiary in the United States, but has been secretly shut down and no longer has any substantive existence. LBAI has claimed, and continues to claim, that it has offices at 880 Canal Street, Stamford, Connecticut. In fact, the lease for that space expired on September 30, 2003 and no other offices have been opened.

4.      Ralph McCrae is a director and the Chairman, President and Chief Executive Officer of Leading Brands, Inc. He is also a director and the Chairman, Chief Executive Officer and Secretary/Treasurer of Leading Brands of Canada, Inc., and the Chairman and Chief Executive Officer of LBAI.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant 28 U.S.C. § 1332(a)(2) because the plaintiff is a citizen of a state and the defendants are all citizens or subjects of a foreign state and the amount in controversy exceeds $75,000.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d).

## COMMON FACTS

7.  During the early part of 2003, Futuristic began negotiating with LBAI to license the sale of Mad Croc ™ Energy Drink ("Mad Croc ™") in North America. From the very beginning, Mr. McRae dictated the terms on which such license could proceed. On March 19, 2003, LBAI and Futuristic entered into a License Agreement. A true copy of that agreement is attached hereto as Exhibit A to this Complaint.

8.  Under the terms of the License Agreement, LBAI had the exclusive right to use the Mad Croc ™ trademark in connection with the marketing, distribution and sale of Mad Croc ™ and promotional items associated with Mad Croc ™ within North America subject to the terms and conditions of the License Agreement. Futuristic had the right to nominate a manufacturer for the product, and nominated DIS B.V. as such manufacturer.

9.  Almost from the very beginning of LBAI's operations under the License Agreement, it failed in material ways to comply with the terms of that agreement. Such failures were directly caused by the direction and intervention of Mr. McRae. Among other things, LBAI was delinquent in its payment or failed to pay critical suppliers of goods such as DIS B.V., brokers, and even to pay retailers agreed-upon amounts of promotion reimbursement.

10. Such failures were caused by the intentional lack of funding by Leading Brands at the direction and control of Mr. McRae. Leading Brands and Mr. McRae acted knowing that such failures would violate the License Agreement and would do substantial harm to the Mad Croc ™ brand.

11. In addition to the foregoing, LBAI failed in any meaningful fashion to promote the Mad Croc ™ brand as it was contractually obliged to do. This failure was again at the specific direction and control of Leading Brands and Mr. McRae who failed to provide the necessary staff or funding knowing that such decisions would render LBAI unable to perform its obligations. The only significant customer for Mad Croc ™ was identified by Futuristic with no assistance from LBAI. As a result, the launch of Mad Croc ™ was substantially harmed in the United States and Canada.

12. In particular, funds that should have been set aside for the promotional spending required by the License Agreement were instead diverted and paid over to Leading Brands at the direction of Mr. McRae.

13. As 2003 passed, Leading Brands and Mr. McRae took steps to cause LBAI to functionally cease to exist. Without notice to Futuristic – or indeed any other public announcement or SEC filing – Leading Brands and Mr. McRae closed LBAI's Connecticut office without opening any new office. Mr. McRae began a process of terminating LBAI employees or forcing them to resign.

14. As of October/November, 2003, LBAI ceased to have any meaningful existence. All of its financial assets had been transferred to Leading Brands. It had no functioning management other than that provided by Mr. McRae or others at Leading Brands.

15. Beginning in the Summer and Fall, 2003, LBAI began ordering product from DIS B.V. that it could not pay for and had no reasonable prospect of paying for. By November, 2003, LBAI owed DIS B.V. in excess of $200,000 for product which it had

already accepted. It could not pay such bills because Leading Brands and Mr. McRae had deprived LBAI of adequate funds to pay its debts as they became due.

16. Notwithstanding its inability to pay, LBAI, at the direction of Leading Brands and Mr. McRae initiated actions seeking to claim an additional nineteen containers of Mad Croc ™ located on various docks throughout the United States. After filing such actions and seeking temporary injunctive relief, LBAI at the direction of Leading Brands and Mr. McRae abruptly abandoned all of those actions. Nonetheless, Mr. McRae refused to take any steps to make clear to the shippers that LBAI was no longer claiming rights in such goods. In fact, Leading Brands threatened the shippers with litigation if they released the goods to the rightful owners of such goods. As a result, the supply of Mad Croc ™ in the United States was severely constrained, substantially harming the value of the Mad Croc ™ brand, and those goods became subject to substantial demurrage costs.

17. In addition to the foregoing, Mr. McRae's actions also caused LBAI to be unable to perform its obligations under ¶ 7.6 of the License Agreement.

18. As part of his campaign of commercial sabotage and vituperation, Mr. McRae made allegations against Mr. Thomas Lines, one of the principals of Futuristic, that he knew were baseless and untrue. Among the allegations made to federal authorities were that Mr. Lines had threatened to physically cut up into little pieces certain LBAI employees. Mr. McRae also made knowingly false allegations to third parties that Mr. Lines had threatened Mr. McRae's children. Mr. McRae made those allegations or arranged for them to be made knowing them to be untrue and as part of an effort to interfere with the commercial operations of Futuristic and undermine its principals.

5

19. One of the obligations of LBAI under ¶ 13 of the License Agreement is that it was prohibited from transferring the license conveyed there under to any other entity. In fact, by shutting down LBAI and operating it directly from Leading Brands, Mr. McRae and Leading Brands intentionally caused LBAI to violate that provision by, in effect, forcing the transfer of the license to Leading Brands.

20. Under the License Agreement, the license would automatically terminate upon either the cessation of LBAI of its business or its insolvency. Leading Brands and Mr. McRae acted to conceal the dissolution of LBAI and its insolvency in order to cause LBAI to evade its obligations under these provisions. In fact, LBAI has not been solvent since October or November, 2003. Notwithstanding that fact, Mr. McRae and Leading Brands continue to assert that the License Agreement is still valid and in force.

21. On October 9, 2003, LBAI filed a Complaint against, *inter alia*, Futuristic and Mr. Lines alleging a panoply of asserted causes of action. On information and belief, the decision to file such action and all decisions relating to such litigation are, in fact, made by Mr. McRae and Leading Brands.

22. Pursuant to the License Agreement, on November 14, 2003, Futuristic, through its counsel, sent a notice of termination and notice of default to LBAI. Not only did LBAI fail to cure the defaults set forth in that letter, LBAI, at the direction of Mr. McRae and Leading Brands took the unjustified position that the License Agreement continued in full force and effect. Mr. McRae and Leading Brands, through counsel, made statements of fact which they knew to be untrue, including the assertion that "LBAI continues to be, and at all relevant times has been, a viable, operating, independent entity, and there has never been a transfer, de facto or otherwise, of any rights under the License

Agreement to any other person or entity." The actual Futuristic termination notice letter – as opposed to the courtesy copy provided to counsel – was returned because LBAI was no longer operating at its Connecticut location and had left no forwarding address. Subsequent letters have also been returned.

## CAUSES OF ACTION

### COUNT I
### Tortious Interference in Contractual Relations

23.  The foregoing paragraphs are incorporated by reference.

24.  The License Agreement was a valid contract.

25.  Mr. McRae and Leading Brands knew that LBAI was a party to the License Agreement.

26.  By their actions, Mr. McRae and Leading Brands caused and procured the breach of the License Agreement.

27.  In fact, the License Agreement was breached.

28.  The actions of Mr. McRae and Leading Brands were taken both with an improper motive and by improper means.

29.  As a result of the actions of Mr. McRae and Leading Brands, Futuristic has suffered substantial damages both directly and to the Mad Croc ™ brand, amounts which could exceed $10 million.

### COUNT II
### Conversion

30.  The foregoing paragraphs are incorporated by reference.

7

31. Pursuant to the License Agreement, upon termination of such agreement, Futuristic is entitled to purchase all Mad Croc ™ product in the LBAI inventory at a pre-set price.

32. Futuristic has made demand to purchase such goods.

33. Mr. McRae and Leading Brands have refused or caused the refusal for such purchase to be consummated. Instead, Mr. McRae and Leading Brands have exercised dominion and control over such goods to the exclusion of the rights of Futuristic. Mr. McRae and Leading Brands have made or caused to be made false statements in affidavits submitted to courts that LBAI had paid for goods that it had not, in fact, paid for. Mr. McRae and Leading Brands have obtained or caused to be obtained by means of abuse of process restraining orders concerning additional Mad Croc ™ product, interfering with Futuristic's ability to market and supply such goods.

34. As a result of the actions of Mr. McRae and Leading Brands, Futuristic has been damaged.

COUNT III
Conversion

35. The foregoing paragraphs are incorporated by reference.

36. LBAI had in its possession funds which were due to be paid pursuant to the License Agreement and LBAI's duties under such License Agreement.

37. Mr. McRae and Leading Brands have instead caused such monies to be transferred to Leading Brands and have exercised dominion and control over them to the exclusion of LBAI and those to whom such funds are due.

38. As a result of the actions of Mr. McRae and Leading Brands, Futuristic has been damaged.

## COUNT IV
### Deceit

39. The foregoing paragraphs are incorporated by reference.

40. Mr. McRae and Leading Brands have on repeated occasions asserted that:

(a) LBAI is still a functioning entity,

(b) LBAI has fulfilled its obligations under the License Agreement,

(c) LBAI has the capacity to fulfill its obligations under the License Agreement, and

(d) LBAI has sufficient assets to cover its obligations to its suppliers.

41. Mr. McRae has stated on at least one occasion to federal officials that Mr. Lines had threatened to physically cut up into little pieces certain LBAI employees.

42. Leading Brands has stated in affidavits filed in other actions that "Leading Brands had previously paid all invoices to DIS B.V. when due and owing."

43. Each of the statements set forth in the foregoing paragraphs is material.

44. Each of the statements set forth in the foregoing paragraphs was false when made.

45. At the time Mr. McRae made the statements set forth above, he knew those statements were false or acted with recklessness to their truth or falsity. At the time Leading Brands made the statements set forth above through its employees, it knew those statements were false or acted with recklessness to their truth or falsity.

46. Each of the statements set forth above was made with the intention that it cause Futuristic to act or to refrain from acting.

47. In fact, the statements set forth above affected the actions of Futuristic.

48. As a result of the actions set forth above, Futuristic has been damaged.

## COUNT V
## Conspiracy

49. The foregoing paragraphs are incorporated by reference.

50. Mr. McRae, Leading Brands, and LBAI acted together to accomplish the unlawful purposes of:

   (a) depriving Futuristic of the benefits of the License agreement,

   (b) transferring assets to make them inaccessible to creditors,

   (c) breaching and concealing the breaches of the License Agreement, and

   (d) damaging the commercial reputation and prospects of Futuristic.

51. Mr. McRae, Leading Brands, and LBAI acted together to accomplish their purposes using the unlawful means of breach of contract, conversion and fraud.

52. The combination of Mr. McRae, Leading Brands, and LBAI possessed a peculiar power of coercion that no one of their number possessed.

53. As a result of the foregoing, Futuristic has been damaged.

## COUNT VI
## Declaratory Judgment – Piercing the Corporate Veil

54. The foregoing paragraphs are incorporated by reference.

55. Leading Brands completely owned, directly or indirectly, LBAI.

56. Leading Brands exercised pervasive control over LBAI.

57. There was a confused intermingling of business assets between Leading Brands and LBAI.

58. At the time of the actions complained of, LBAI had either no or thin capitalization.

59. At the time of the actions complained of, Leading Brands and LBAI failed to observe corporate formalities.

60. LBAI was insolvent at the time of the actions set forth above.

61. Leading Brands siphoned away LBAI's funds.

62. LBAI had no functioning officers and directors other than persons acting on behalf of Leading Brands.

63. Leading Brands used LBAI for transactions that were, in fact, on its own behalf.

64. Leading Brands used LBAI in promoting fraud. In particular, Leading Brands has used LBAI in abuse of process, in misleading various courts, and in falsely claiming goods as to which LBAI had no ownership.

65. There is a real dispute as to the responsibility of Leading Brands for the debts and obligations of LBAI.

66. Leading Brands should be adjudicated as responsible for the actions, debts, and obligations of LBAI.

## COUNT VII
## Breach of Contract – Piercing the Corporate Veil

54. The foregoing paragraphs are incorporated by reference.

55. As set forth above, the License Agreement was a valid contract that was breached by LBAI.

56. As set forth above, Leading Brands is responsible for such breaches and for any damages under the doctrine of piercing the corporate veil.

57. As a result of such breaches, Futuristic has been damaged.


WHEREFORE, Futuristic asks that this Court:

1. Award it damages for the harm it has suffered,

2. Award it punitive damages,

3. Issue injunctive relief as necessary to cause defendants to cease their inequitable conduct and to cure prior inequitable conduct,

4. Order an accounting with respect to all aspects of the License Agreement, and

5. Enter such other relief as justice my require.

## JURY DEMAND

Plaintiff demands a jury on all matters triable to a jury.

Respectfully submitted,

FUTURISTIC BRANDS USA, INC.

By its attorneys,

*/s/ Evan Slavitt*

Evan Slavitt (466510)
Bodoff & Slavitt LLP
225 Friend Street
Boston, MA 02114
(617)742-7300

Dated: February 13, 2004

13