UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| FUTURISTIC BRANDS USA, INC., <br><br> Plaintiff, <br><br> v. <br><br> LEADING BRANDS, INC., and RALPH McRAE, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. <br> ) <br> ) <br> ) <br> ) <br> ) |

**AFFIDAVIT OF EVAN SLAVITT**

I, Evan Slavitt, do hereby depose and say as follows:

1. My name is Evan Slavitt and I am counsel to Futuristic Brands USA, Inc. ("Futuristic") in this case. I am also counsel to Futuristic in litigation with Leading Brands of America, Inc. ("LBAI") in the United States District Court for the District of Connecticut, the Massachusetts Superior Court for Suffolk County, as intervenor in the United States District Court for the Eastern District of Virginia, and through local counsel in the Supreme Court for British Columbia in Canada. LBAI has appeared and answered in the Suffolk County action.

2. Based on disclosures in those cases and interviews with potential witnesses, I have learned the following about the relationship between Leading Brands, Inc. and LBAI:

   a. LBAI is a wholly owned subsidiary of Leading Brands;

{00007985.1}

b. When LBAI was originally established, it had physical offices in Connecticut, a president, and a variety of employees;

c. The License Agreement with Futuristic, like the License Agreements with other companies, was not signed with the anticipation of making the best efforts on behalf of the Futuristic product, but to create a ready source of cash to divert to the promotion of other Leading Brands' products;

d. When Robert Miller, the then-LBAI president, sought funds to comply with the terms of the License Agreement, Mr. McRae refused;

e. All or substantially all of LBAI's funds were controlled by Leading Brands and no one at LBAI had authority to disburse funds;

f. LBAI deposited its funds in a lockbox account that was swept daily with the funds being transferred to Leading Brands;

g. Mr. McRae dictated or attempted to dictate the terms of all contracts that LBAI signed;

h. In August of 2003, Mr. Miller, resigned and Mr. McRae took over direct plenary control of LBAI which he exercises to the present day;

i. After Mr. Miller resigned, Mr. McRae fired or caused the termination of most of the staff of LBAI;

j. After Mr. Miller resigned, Mr. McRae closed the Connecticut office of LBAI. To the extent it now has offices at all, it is simply the addresses of sales representatives who work at the direction of Mr. McRae;

k. All decisions concerning the litigation in which LBAI is a party are made by Mr. McRae;

l.  Mr. McRae is listed as the contact person for press releases issued by Leading Brands concerning the litigation involving LBAI.

m.  Mr. McRae is the President, Chairman and Chief Executive Officer of Leading Brands.

3.  I believe that further discovery will confirm that LBAI is a mere instrumentality or alter ego of Leading Brands and that Mr. McRae has personally and directly engaged in the conduct that is at issue. I believe that discovery will indicate that for at least six months, and possibly longer, LBAI has had no meaningful control over its finances or operations, that its assets are far below its liabilities, that revenues have been diverted to Leading Brands, and that there is no meaningful distinction between Leading Brands and LBAI.

FURTHER THE AFFIANT SAYETH NOT.

Signed under the pains and penalties of perjury this 25th day of May, 2004.

_____
Evan Slavitt