UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FUTURISTIC BRANDS USA, INC., NEW SUN BEVERAGES CORPORATION (USA), INC., ZEMPER INTERNATIONAL SA, ) ) ) ) ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 04-cv-10303RWZ |
| ) | |
| LEADING BRANDS, INC., and RALPH McRAE, ) ) ) | |
| Defendants. ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR INJUNCTIVE RELIEF

### INTRODUCTION

This action arises from the actions of Leading Brands, Inc. ("Leading Brands") and Mr. McRae in their interference with the contracts of Leading Brands' subsidiary, Leading Brands of America, Inc. ("LBAI"), in their continuing interference in the ability of the plaintiffs to re-license or sell their brands, and the misappropriation of trade secret information. At this stage of the proceedings, however, the only issue before this Court is their continuing efforts to interfere with the plaintiffs ability to sell or re-license their brands. In light of the continuing attempts by the defendant to interfere with attempts at re-licensing, a preliminary injunction is required.

## STATEMENT OF FACTS

Futuristic Brands USA, Inc. ("Futuristic"), Zemper International SA ("Zemper") and New Sun Beverages Company (USA) Inc. ("New Sun") are in the business of developing, licensing and sublicensing beverage brands. Slavitt Aff. ¶¶ 2-4. In March, 2003, based on representations of ability, capacity, and intent, Futuristic, Zemper and New Sun executed License Agreements with Leading Brands of America, Inc ("LBAI"). Slavitt Aff. Exhibits A, B, C. It is hard to find a provision of those agreements that the plaintiffs believe has not been breached. Slavitt Aff. Exhibits D, E, F, J. Indeed, responses to demands for compliance have been met with defiance and refusal. Slavitt Aff. Exhibits G, H, I. Even in the face of seemingly uncontestable facts, LBAI denies any breaches and asserts that it cannot be terminated for cause.

For the purposes of this action, the Court need not reach that dispute. It cannot be denied that all three License Agreements contain provisions that allow for termination with or without cause. Termination for cause is covered in §§ 15.1 and 15.2. Termination without cause is provided for in § 15.3 of the Futuristic License Agreement:

> Notwithstanding anything herein to the contrary, should FUTURISTIC or any successor to FUTURISTIC, terminate this Agreement without cause, or not renew this Agreement pursuant to the express provisions thereof ("Non Cause Termination") then, provided that the Licensee shall not be in breach of any of the provisions of this Agreement, FUTURISTIC or its successor, as the case may be, shall be liable to pay to the Licensee a severance payment (the "severance payment") in full and final settlement of all claims arising out of or in connection with this Agreement in any way whatsoever by Licensee or Licensees customers against Futuristic of US $3 (three) per Case of Licensed Products sold by Licensee, net of returns and credits, during the most recently completed twelve (12) month period ending on the last day of the month preceding the month in which the Agreement is terminated, less the amount, if any Licensee may receive from any assignee of its rights under this Agreement. . . . Notwithstanding the foregoing, neither FUTURISTIC nor any successor to FUTURISTIC shall be entitled to terminate this Agreement without cause prior to the

expiration of one (1) year from the commencement date of this Agreement.

Slavitt Aff. Exhibit A (Futuristic License Agreement § 15.3). The provisions of the Zemper and New Sun Agreements are identical. Slavitt Aff. Exhibits B, C. Accordingly, the absolute last day on which even Non Cause Terminations could have become effective was March 18, 2004 for the New Sun License Agreement, and March 19, 2004 for the Futuristic License Agreement and Zemper License Agreement.

Each of Zemper, New Sun and Futuristic has given notice of the termination of their respective License Agreements. Slavitt Aff. Exhibits D, E, F, O, P, Q. LBIX has written to suppliers threatening them if they sell to anyone other than LBAI. Slavitt Exhibit L, R. Leading Brands continues to refuse even to confirm the mere fact of termination. Slavitt Aff. ¶ 6. As a result, the ability of others to sell into the United States is unclear, impeding the re-licensing or sale of the brands.

There is currently pending an action in Massachusetts Superior Court against LBAI relating to the termination issue. Nonetheless, given the actions of Leading Brands in the past, it is not clear that it will abide by the findings in that case.

## ARGUMENT

### A.  Standard

It is well-settled that a party seeking a preliminary injunction must show (1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the moving party's likelihood of success on the merits, the risk of irreparable harm to the moving party outweighs the potential harm to the

nonmoving party in granting the injunction. The plaintiffs satisfy each of those requirements.

### B.  Likelihood of Success

In order to understand this criterion clearly, it is important to separate out three different concepts. First, there is the issue before this Court and the Superior Court of Massachusetts – are the Futuristic, New Sun and Zemper License Agreements terminated? Second, there is the issue before the arbitration panel – what damages if any does LBAI owe the plaintiffs or otherwise as a result of the alleged breaches or terminations? Third, what damages do Leading Brands and Mr. McRae owe to the plaintiffs as a result of their actions. Only the first question can be considered in evaluating the likelihood of success on the merits in the instant case.

Turning then to the pure issue of termination, Zemper, New Sun and Futuristic have the absolute right of termination after one year. If an Arbitration Panel determines this is for cause, they owe nothing to LBAI. If a Non Cause Termination, they may owe a termination fee to LBAI. In either event, however, the License Agreements are terminated. Any other arguments between the parties are subject to binding arbitration.

> **Save with respect to the rights of either party to apply to a court of law or equity for specific performance or an injunction** or equitable relief, any controversy or claim arising out of or pursuant to this Agreement or its termination or arising out of any transaction or occurrence contemplated by this Agreement shall be settled by arbitration[.]

Futuristic License Agreement ¶ 21.8; Zemper License Agreement ¶ 21.8; New Sun License Agreement ¶ 27.8. (emphasis added). Moreover, it is important to note that although the License Agreements require that all claims be settled by arbitration they

explicitly reserved the parties' rights to seek specific performance or an injunction in a court of law or equity. Thus, there is no doubt that Futuristic, New Sun and Zemper are entitled to bring this action for an injunction.

There is nothing more that can be added. At most, Leading Brands could argue that the original Futuristic and New Sun termination letters were premature. Nonetheless, it is now more than a year since the Futuristic License Agreement and New Sun License Agreement were executed, and Futuristic, New Sun and Zemper gave notices of termination after the expiration of the one year period, without prejudice to any earlier terminations which Futuristic, New Sun and Zemper believe to be effective. Thus, there is absolutely no impediment to an effective Non Cause Termination now. There has never been any impediment to an effective With Cause Termination.

Futuristic, New Sun and Zemper do not intend for this action to determine one way or the other the merits of the arguments for or against one type of termination. The only issue is whether the License Agreements remain in effect. Futuristic, New Sun and Zemper will prevail on that issue.

### C.  Irreparable Harm

There are several types of irreparable harm presented in this case. First, as a practical matter, LBAI is no longer purchasing or distributing either Mad Croc or Red Devil and has never purchased any New Sun product. Slavitt Aff. ¶ 7. As a result, the brands are not being supported in the United States. This creates a multitude of irreparable marketing harms. Retail stores are devoting shelf space to other products with no assurance that such shelf space can be recaptured. The public's allegiance is being

transferred to other energy drinks. The very value of the brands themselves is diminishing. There is simply no way that adequate money damages can ever be calculated or awarded to address these harms. The loss of a business' reputation and goodwill constitutes irreparable injury. *See e.g., Basicomputer Corp. v. Scott*, 973 F.2d 507 (6th Cir. 1992); *Alexander & Alexander, Inc. v. Danahy*, 21 Mass. App. Ct. 488 (1986).

Second, even the lost sales becomes a problematic calculation. When damages cannot easily be calculated, that in itself constitutes irreparable harm. *E.g., New Boston Sys. v. Joffe*, 1993 Mass. Super. LEXIS 108, 6-7 (Mass. Super. 1993) ("damages would be much more difficult to calculate and therefore present the type of irreparable harm ideally suited to a preliminary injunction"). In the instant case, attempting to measure lost sales becomes particularly difficult in light of the fact that LBAI's own prior conduct will be at issue.

An entirely separate problem is posed by the apparent dissolution of LBAI. Its offices were located in Connecticut at the time of the License Agreements, but that office is closed. It appears that other than a few salesmen (less than 3), it has no assets in the United States and that its funds are now located in Canada. Slavitt Aff. ¶ 8. Thus, to the extent damages are awarded in the arbitration, there is a serious question as to their collectibility. This also qualifies as irreparable harm. *See, Packaging Industries Group, Inc. v. Cheney*, 380 Mass. 609, 617 n. 11; *William R. Marino, P.C. v. PJD Entertainment, Inc.*, 1998 Mass. Super. LEXIS 411 (Mass. Super. 1998). Indeed, even if recovery is not precluded but significantly impeded, irreparable harm is present. *Ustrust v. Einreinhofer*, 1994 Mass. Super. LEXIS 730 (Mass. Super. 1994) (Sosman, J.)

### D. Balance of Harms

Balancing the harms makes clear that Leading Brands has essentially no harm from the issuance of the preliminary relief. First, if its position is as it asserts, Leading Brands itself has no interest in the distribution of any of the relevant products in the United States or Canada – that is a matter solely for its subsidiary. Thus, any rights or harms are at that level and not at the parent level. In any event, as noted above, LBAI is not, in any meaningful way, selling or distributing either Mad Croc, Red Devil or New Sun products, and has not done so for some time. Thus, its position is essentially that of the "dog in the manger."[1] Neither Leading Brands nor LBAI are benefiting at all by the License Agreements but wants to preclude Zemper, New Sun and Futuristic from having any benefit. If the preliminary injunction issues, it will simply recognize the status quo.

---

[1] The allusion is to one of Aesop's fables, written about 600 BC, in which a dog was taking a nap in a manger. When an ox came and tried to eat the hay in the manger, the dog barked furiously, snapped at him and wouldn't let him get at his food, food that, of course, was useless to the dog. At last the ox gave up and went away muttering, "Ah, people often grudge others what they cannot enjoy themselves".

{00008321.1}                                7

## CONCLUSION

For the foregoing reasons, the Court should issue a preliminary injunction in the form submitted.

                                  Respectfully submitted,

                                  FUTURISTIC BRANDS USA, INC., NEW SUN BEVERAGES CORPORATION (USA), INC., and ZEMPER INTERNATIONAL SA

                                  By their attorneys,

                                  */s/ Evan Slavitt*
                                  Evan Slavitt (466510)
                                  Bodoff & Slavitt LLP
                                  225 Friend Street
                                  Boston, MA 02114
                                  (617)742-7300

Dated: June 18, 2004

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be delivered a copy of the foregoing on the date set forth above to all counsel of record by hand, courier, or first class mail.

                                  */s/ Evan Slavitt*