UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERK'S OFFICE

2004 JUN 18  A 9: 56

U.S. DISTRICT COURT
DISTRICT OF MASS.

FUTURISTIC BRANDS USA, INC., )
NEW SUN BEVERAGES )
CORPORATION (USA), INC., )
ZEMPER INTERNATIONAL SA, )
)
Plaintiff, )
)
v. ) Civil Action No. 04-cv-10303RWZ
)
LEADING BRANDS, INC., and )
RALPH McRAE, )
)
Defendants. )

## AMENDED COMPLAINT AND JURY DEMAND

### INTRODUCTION

1. This case arises from an intentional and calculated course of conduct by the defendants to (i) interfere with and destroy the ability of Futuristic Brands USA, Inc. to market its brand of energy drink, Mad Croc ™ (ii) interfere with and destroy the ability of Zemper International SA. to market its brand of energy drink, Red Devil ™ in the United States and Canada, and (iii) abuse trade secrets, violate a confidentiality agreement and interfered and destroy the ability of New Sun Beverages Corporation (USA), Inc. to market its soy health drink in the United States and Canada. This conduct has included acts of fraud and deception, interference with contractual relations, attempts to conceal assets from creditors, conversion, and the misuse of the corporate form to accomplish inequitable conduct. The conduct was controlled and directed by Mr. McRae based on his personal animus for one of the principals of Futuristic, Mr. Thomas Lines and in flagrant disregard of his corporate, legal, and fiduciary duties.

## PARTIES

2. Futuristic Brands USA, Inc. ("Futuristic") is a Delaware corporation with its principal offices in New York and Massachusetts. Futuristic is the exclusive licensee with the right to sublicense and distribute the Mad Croc ™ brand of energy drink.

3. New Sun Beverages Corporation (USA), Inc. ("New Sun") is a Delaware corporation with offices in Massachusetts and New York. New Sun is developing a specialty drink (the "New Sun beverage").

4. Zemper International SA ("Zemper") is a Bahamian corporation with offices in Nassau, Bahamas and Luxembourg, Europe. During the relevant period, Zemper was the exclusive licensee with the right to sublicense and distribute the Red Devil ™ brand of energy drink. Zemper has since sold those rights but such sale is being interfered with by the actions of the defendants.

5. Leading Brands, Inc. (Leading Brands) is a Canadian corporation with its principal offices in Vancouver, Canada. Leading Brands is engaged in the bottling, distribution, sales, merchandising and brand management of beverage and food products throughout most of North America. Leading Brands of America, Inc. ("LBAI") is a Delaware corporation that was the Leading Brand's principal operating subsidiary in the United States, but has been secretly shut down and no longer has any substantive existence. LBAI has claimed, and continues to claim, that it has offices at 880 Canal Street, Stamford, Connecticut. In fact, the lease for that space expired on September 30, 2003 and no other offices have been opened.

6. Ralph McCrae is a director and the Chairman, President and Chief Executive Officer of Leading Brands, Inc. He is also a director and the Chairman, Chief

Executive Officer and Secretary/Treasurer of Leading Brands of Canada, Inc., and the Chairman and Chief Executive Officer of LBAI.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant 28 U.S.C. § 1332(a)(2) because the plaintiff is a citizen of a state and the defendants are all citizens or subjects of a foreign state and the amount in controversy exceeds $75,000.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d).

## COMMON FACTS

9. During the early part of 2003, Futuristic began negotiating with LBAI to license the sale of Mad Croc ™ Energy Drink ("Mad Croc ™") in North America. Similarly, Zemper negotiated a similar license of its Red Devil ™ product as did New Sun with respect to its soy health drink. From the very beginning, Mr. McRae dictated the terms on which such licenses could proceed.

10. During the course of such negotiations, New Sun disclosed trade confidential and proprietary information about its soy health drink, AquaSoy, a trademark held by New Sun since October 30, 2002. Such disclosures were pursuant to the terms of one or more confidentiality agreements. Among the types of information disclosed were formulary and dietary information, marketing analyses and plans, and the like.

11. On March 18, 2003, LBAI and New Sun entered into a License Agreement. A true copy of that agreement is attached hereto as Exhibit A to this Complaint.

12. On March 19, 2003, LBAI and Futuristic entered into a License Agreement. A true copy of that agreement is attached hereto as Exhibit B to this Complaint.

13. On March 19, 2003, LBAI and Zemper entered into a License Agreement. A true copy of that agreement is attached hereto as Exhibit C to this Complaint.

14. Under the terms of the Futuristic License Agreement, LBAI had the exclusive right to use the Mad Croc ™ trademark in connection with the marketing, distribution and sale of Mad Croc ™ and promotional items associated with Mad Croc ™ within North America subject to the terms and conditions of the License Agreement. Futuristic had the right to nominate a manufacturer for the product, and nominated DIS B.V. as such manufacturer. The terms of the Zemper and New Sun license agreements were similar.

15. Almost from the very beginning of LBAI's operations under the license agreements, it failed in material ways to comply with the terms of those agreements. Such failures were directly caused by the direction and intervention of Mr. McRae. Among other things, LBAI was delinquent in its payment or failed to pay critical suppliers of goods such as DIS B.V., brokers, and even to pay retailers agreed-upon amounts of promotion reimbursement.

16. Such failures were caused by the intentional lack of funding by Leading Brands at the direction and control of Mr. McRae. Leading Brands and Mr. McRae acted knowing that such failures would violate the License Agreement and would do substantial harm to the Mad Croc ™ brand.

17. In addition to the foregoing, LBAI failed in any meaningful fashion to promote the Mad Croc ™ and Red Devil ™ brands as it was contractually obliged to do.

This failure was again at the specific direction and control of Leading Brands and Mr. McRae who failed to provide the necessary staff or funding knowing that such decisions would render LBAI unable to perform its obligations. The only significant customer for Mad Croc ™ and Red Devil ™ was identified by Futuristic with no assistance from LBAI. As a result, the launch of Mad Croc ™ and Red Devil ™ was substantially harmed in the United States and Canada.

18. In particular, funds that should have been set aside for the promotional spending required by the license agreements were instead diverted and paid over to Leading Brands at the direction of Mr. McRae.

19. As 2003 passed, Leading Brands and Mr. McRae took steps to cause LBAI to functionally cease to exist. Without notice to the plaintiffs – or indeed any other public announcement or SEC filing – Leading Brands and Mr. McRae closed LBAI's Connecticut office without opening any new office. Mr. McRae began a process of terminating LBAI employees or forcing them to resign.

20. As of October/November, 2003, LBAI ceased to have any meaningful existence. All of its financial assets had been transferred to Leading Brands. It had no functioning management other than that provided by Mr. McRae or others at Leading Brands.

21. Beginning in the Summer and Fall, 2003, LBAI began ordering product from DIS B.V. that it could not pay for and had no reasonable prospect of paying for. By November, 2003, LBAI owed DIS B.V. in excess of $200,000 for product which it had already accepted. It could not pay such bills because Leading Brands and Mr. McRae had deprived LBAI of adequate funds to pay its debts as they became due.

22. Notwithstanding its inability to pay, LBAI, at the direction of Leading Brands and Mr. McRae initiated actions seeking to claim an additional nineteen containers of Mad Croc ™ located on various docks throughout the United States. After filing such actions and seeking temporary injunctive relief, LBAI at the direction of Leading Brands and Mr. McRae abruptly abandoned all of those actions. Nonetheless, Mr. McRae refused to take any steps to make clear to the shippers that LBAI was no longer claiming rights in such goods. In fact, Leading Brands threatened the shippers with litigation if they released the goods to the rightful owners of such goods. As a result, the supply of Mad Croc ™ in the United States was severely constrained, substantially harming the value of the Mad Croc ™ brand, and those goods became subject to substantial demurrage costs.

23. In addition to the foregoing, Mr. McRae's actions also caused LBAI to be unable to perform its obligations under ¶ 7.6 of the Futuristic License Agreement.

24. As part of his campaign of commercial sabotage and vituperation, Mr. McRae made allegations against Mr. Thomas Lines, one of the principals of Futuristic, Zemper, and New Sun that he knew were baseless and untrue. Among the allegations made to federal authorities were that Mr. Lines had threatened to physically cut up into little pieces certain LBAI employees. Mr. McRae also made knowingly false allegations to third parties that Mr. Lines had threatened Mr. McRae's children. Mr. McRae made those allegations or arranged for them to be made knowing them to be untrue and as part of an effort to interfere with the commercial operations of Futuristic and undermine its principals.

25. One of the obligations of LBAI under ¶ 13 of the license agreements is that it was prohibited from transferring the license conveyed there under to any other

6

entity. In fact, by shutting down LBAI and operating it directly from Leading Brands, Mr. McRae and Leading Brands intentionally caused LBAI to violate those provisions by, in effect, forcing the transfer of the license to Leading Brands.

26. Under the license agreements, the licenses would automatically terminate upon either the cessation of LBAI of its business or its insolvency. Leading Brands and Mr. McRae acted to conceal the dissolution of LBAI and its insolvency in order to cause LBAI to evade its obligations under these provisions. In fact, LBAI has not been solvent since October or November, 2003. Notwithstanding that fact, Mr. McRae and Leading Brands continue to assert that the license agreement are still valid and in force.

27. On October 9, 2003, LBAI filed a Complaint against, *inter alia*, Futuristic, Zemper, New Sun, and Mr. Lines alleging a panoply of asserted causes of action. On information and belief, the decision to file such action and all decisions relating to such litigation are, in fact, made by Mr. McRae and Leading Brands.

28. Pursuant to the License Agreement, on November 14, 2003, Futuristic, through its counsel, sent a notice of termination and notice of default to LBAI. A true and accurate copy of that letter is attached as Exhibit D. Not only did LBAI fail to cure the defaults set forth in that letter, LBAI, at the direction of Mr. McRae and Leading Brands took the unjustified position that the License Agreement continued in full force and effect. Mr. McRae and Leading Brands, through counsel, made statements of fact which they knew to be untrue, including the assertion that "LBAI continues to be, and at all relevant times has been, a viable, operating, independent entity, and there has never been a transfer, de facto or otherwise, of any rights under the License Agreement to any other person or entity." The actual Futuristic termination notice letter – as opposed to the courtesy copy provided to counsel – was returned because LBAI was no longer operating

7

at its Connecticut location and had left no forwarding address. Subsequent letters have also been returned.

29. Pursuant to the License Agreement, on December 18, 2003, New Sun, through its counsel, sent a notice of termination and notice of default to LBAI. A true and accurate copy of that letter is attached as Exhibit E. Not only did LBAI fail to cure the defaults set forth in that letter, LBAI, took the unjustified position that the License Agreement continued in full force and effect. The actual New Sun termination notice letter – as opposed to the courtesy copy provided to counsel – was returned because LBAI was no longer operating at its Connecticut location and had left no forwarding address. Subsequent letters have also been returned.

30. Pursuant to the License Agreement, on March 23, 2004, Zemper, through its counsel, sent a notice of termination and notice of default to LBAI. A true and accurate copy of that letter is attached as Exhibit F. Not only did LBAI fail to cure the defaults set forth in that letter, LBAI, took the unjustified position that the License Agreement continued in full force and effect notwithstanding the fact that LBAI had never met the contractual minimum quantities and had no ability to do so. The actual Zemper termination notice letter – as opposed to the courtesy copy provided to counsel – was returned because LBAI was no longer operating at its Connecticut location and had left no forwarding address. Subsequent letters have also been returned.

31. The plaintiffs are actively pursuing other possible candidates to replace LBAI for North America and Mexico and in the meanwhile are keeping their brands alive at great expense while trying to repair the damage done to them by LBAI. Given LBAI's history of intransigence, litigiousness, and obstinance, the plaintiffs have a real concern that LBAI will take additional steps to impede such licensing or continued business.

32. Upon termination of the license agreements, LBAI has a variety of obligations. It has failed to comply with any of them at the direction of Leading Brands and Mr. McRae.

33. On June 11, 2004, Zemper, New Sun, and Futuristic sent confirmatory termination letters to LBAI. True and accurate copies of those letters are attached as Exhibit G.

## CAUSES OF ACTION

### COUNT I
Tortious Interference in Contractual Relations

34. The foregoing paragraphs are incorporated by reference.

35. The license agreements were valid contracts.

36. Mr. McRae and Leading Brands knew that LBAI was a party to the license agreements.

37. By their actions, Mr. McRae and Leading Brands caused and procured the breach of the license agreement.

38. In fact, the license agreement was breached.

38. The actions of Mr. McRae and Leading Brands were taken both with an improper motive and by improper means.

40. As a result of the actions of Mr. McRae and Leading Brands, plaintiffs has suffered substantial damages both directly and to the Mad Croc ™ and Red Devil ™ brands, amounts which could exceed $10 million.

9

## COUNT II
Tortious Interference in Contractual Relations

41. The foregoing paragraphs are incorporated by reference.

42. Zemper has now sold its rights to Red Devil ™ in the U.S. and Canada to a third party.

43. Such sale is now being interfered with because Leading Brands continues to assert that it or its subsidiary still has rights in the marketing of Red Devil ™ in the United States and Canada. Attached hereto as Exhibit H is a true and accurate copy of an email to the purchaser from Timothy Powers, counsel to Leading Brands.

44. As a result of the actions of Leading Brands and Mr. McRae, Zemper has been damaged.

## COUNT III
Conversion

45. The foregoing paragraphs are incorporated by reference.

46. Pursuant to the License Agreement, upon termination of such agreement, Futuristic is entitled to purchase all Mad Croc ™ product in the LBAI inventory at a pre-set price.

47. Futuristic has made demand to purchase such goods.

48. Mr. McRae and Leading Brands have refused or caused the refusal for such purchase to be consummated. Instead, Mr. McRae and Leading Brands have exercised dominion and control over such goods to the exclusion of the rights of Futuristic. Mr. McRae and Leading Brands have made or caused to be made false statements in affidavits submitted to courts that LBAI had paid for goods that it had not, in fact, paid for. Mr. McRae and Leading Brands have obtained or caused to be obtained

10

by means of abuse of process restraining orders concerning additional Mad Croc ™ product, interfering with Futuristic's ability to market and supply such goods.

49.  As a result of the actions of Mr. McRae and Leading Brands, Futuristic has been damaged.

## COUNT IV
### Conversion

50.  The foregoing paragraphs are incorporated by reference.

51.  LBAI had in its possession funds which were due to be paid pursuant to the license agreements and LBAI's duties under such license agreements.

52.  Mr. McRae and Leading Brands have instead caused such monies to be transferred to Leading Brands and have exercised dominion and control over them to the exclusion of LBAI and those to whom such funds are due.

53.  As a result of the actions of Mr. McRae and Leading Brands, plaintiffs have been damaged.

## COUNT V
### Deceit

54.  The foregoing paragraphs are incorporated by reference.

55.  Mr. McRae and Leading Brands have on repeated occasions asserted that:

(a)  LBAI is still a functioning entity,

(b)  LBAI has fulfilled its obligations under the license agreements,

(c)  LBAI has the capacity to fulfill its obligations under the license agreements, and

(d)  LBAI has sufficient assets to cover its obligations to its suppliers.

56. Mr. McRae has stated on at least one occasion to federal officials that Mr. Lines had threatened to physically cut up into little pieces certain LBAI employees.

57. Leading Brands has stated in affidavits filed in other actions that "Leading Brands had previously paid all invoices to DIS B.V. when due and owing."

58. Each of the statements set forth in the foregoing paragraphs is material.

59. Each of the statements set forth in the foregoing paragraphs was false when made.

60. At the time Mr. McRae made the statements set forth above, he knew those statements were false or acted with recklessness to their truth or falsity. At the time Leading Brands made the statements set forth above through its employees, it knew those statements were false or acted with recklessness to their truth or falsity.

61. Each of the statements set forth above was made with the intention that it cause Futuristic to act or to refrain from acting.

62. In fact, the statements set forth above affected the actions of plaintiffs and others.

63. As a result of the actions set forth above, plaintiffs have been damaged.

### COUNT VI
Conversion/Theft of Trade Secrets

64. The foregoing paragraphs are incorporated by reference.

65. The disclosures made to LBAI by New Sun were valuable trade secrets protected by one or more confidentiality agreements that prohibited disclosure or use other than in the context of the New Sun License Agreement.

66. At the time that information was disclosed, LBAI, Leading Brands and Mr. McRae were aware of the requirement that such information be kept confidential.

12

67. In fact, Leading Brands at the direction of Mr. McRae has used and continues to use such information in the marketing of its own product Soy$_2$O.

68. Such use is improper and has caused damage to New Sun.

## COUNT VII
Tortious Interference in Contractual Relations

69. The foregoing paragraphs are incorporated by reference.

70. LBAI was party to certain confidentiality agreements relating to the New Sun trade secret and proprietary information.

71. The confidentiality agreements were valid contracts.

71. Mr. McRae and Leading Brands knew that LBAI was a party to the confidentiality agreements.

72. By their actions, Mr. McRae and Leading Brands caused and procured the breach of the confidentiality agreements.

37 In fact, the confidentiality agreements were breached.

74. The actions of Mr. McRae and Leading Brands were taken both with an improper motive and by improper means.

75. As a result of the actions of Mr. McRae and Leading Brands, New Sun has suffered substantial damages.

76. The continued marketing of Soy$_2$O is unlawful and inequitable.

## COUNT VIII
Conspiracy

77. The foregoing paragraphs are incorporated by reference.

78. Mr. McRae, Leading Brands, and LBAI acted together to accomplish the unlawful purposes of:

   (a) depriving Futuristic of the benefits of the License agreement,

   (b) transferring assets to make them inaccessible to creditors,

   (c) breaching and concealing the breaches of the License Agreement, and

   (d) damaging the commercial reputation and prospects of Futuristic.

79. Mr. McRae, Leading Brands, and LBAI acted together to accomplish their purposes using the unlawful means of breach of contract, conversion and fraud.

80. The combination of Mr. McRae, Leading Brands, and LBAI possessed a peculiar power of coercion that no one of their number possessed.

81. As a result of the foregoing, Futuristic has been damaged.

**COUNT IX**
Declaratory Judgment – Piercing the Corporate Veil

82. The foregoing paragraphs are incorporated by reference.

83. Leading Brands completely owned, directly or indirectly, LBAI.

84. Leading Brands exercised pervasive control over LBAI.

85. There was a confused intermingling of business assets between Leading Brands and LBAI.

86. At the time of the actions complained of, LBAI had either no or thin capitalization.

87. At the time of the actions complained of, Leading Brands and LBAI failed to observe corporate formalities.

88. LBAI was insolvent at the time of the actions set forth above.

89. Leading Brands siphoned away LBAI's funds.

90. LBAI had no functioning officers and directors other than persons acting on behalf of Leading Brands.

91. Leading Brands used LBAI for transactions that were, in fact, on its own behalf.

92. Leading Brands used LBAI in promoting fraud. In particular, Leading Brands has used LBAI in abuse of process, in misleading various courts, and in falsely claiming goods as to which LBAI had no ownership.

93. There is a real dispute as to the responsibility of Leading Brands for the debts and obligations of LBAI.

94. Leading Brands should be adjudicated as responsible for the actions, debts, and obligations of LBAI.

## COUNT X
Breach of Contract – Piercing the Corporate Veil

96. The foregoing paragraphs are incorporated by reference.

97. As set forth above, the license agreements were valid contracts that were breached by LBAI.

98. As set forth above, Leading Brands is responsible for such breaches and for any damages under the doctrine of piercing the corporate veil.

99. As a result of such breaches, plaintiffs have been damaged.

WHEREFORE, plaintiffs ask that this Court:

1. Award damages for the harm suffered,

2. Award punitive damages,

    3.    Issue injunctive relief as necessary to cause defendants to cease their inequitable conduct and to cure prior inequitable conduct,

    4.    Issue injunctive relief precluding Leading Brands or any affiliate from marketing or selling $Soy_2O$ or any other soy health drink.

    5.    Order an accounting with respect to all aspects of the license agreement, and

    6.    Enter such other relief as justice may require.

### JURY DEMAND

Plaintiff demands a jury on all matters triable to a jury.

Respectfully submitted,

FUTURISTIC BRANDS USA, INC., NEW SUN BEVERAGES CORPORATION (USA), INC., and ZEMPER INTERNATIONAL SA

By its attorneys,

*Evan Slavitt*
Evan Slavitt (466510)
Bodoff & Slavitt LLP
225 Friend Street
Boston, MA 02114
(617)742-7300

Dated: June 18, 2004

### CERTIFICATE OF SERVICE

I hereby certify that I have caused to be delivered a copy of the foregoing on the date set forth above to all counsel of record by hand, courier, or first class mail.

*Evan Slavitt*