UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| FUTURISTIC BRANDS USA, INC., NEW SUN BEVERAGES CORPORATION (USA), INC. and ZEMPER INTERNATIONAL SA |   |
|---|---|
| Plaintiffs, | |
| v. | Civil Action No. 04-CV-10303-RWZ |
| LEADING BRANDS, INC. and RALPH MCRAE | |
| Defendants. | |

FILED
IN CLERKS OFFICE

2004 JUN 28  P 3:48

U.S. DISTRICT COURT
DISTRICT OF MASS.

## ANSWER AND JURY CLAIM OF DEFENDANTS LEADING BRANDS, INC. AND RALPH MCRAE

### FIRST DEFENSE

Without waiving their defense of lack of personal jurisdiction in this judicial district or any other defense, Defendants Leading Brands, Inc. ("LBI") and Ralph McRae answer the Complaint and Jury Demand of Plaintiff Futuristic Brands USA, Inc. ("Futuristic") as follows:

### INTRODUCTION

1. This paragraph describes Plaintiffs' theory of its case and contains no factual assertion to which a response is required. To the extent this paragraph may be deemed to require a response, the allegations contained in it are denied.

2. LBI and McRae are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 2 of the Complaint and on that basis deny the allegations. Further answering, LBI and Mr. McRae state that at the time the contract was formed Futuristic Brands USA, Inc. ("Futuristic") did not hold itself out to have offices in

Massachusetts, but rather claimed to have its principal offices at the law office of Alan Van Praag in the firm Eaton & Van Winkle, 3 Park Avenue, New York, New York, 10016, and an office in Luxembourg.

3. LBI and McRae are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 3 of the Complaint and on that basis deny the allegations. Further answering, LBI and Mr. McRae state that at the time the contract was formed, New Sun Beverages Corporation (USA), Inc. ("New Sun") did not hold itself out to have offices in Massachusetts, but rather claimed to have its principal offices at the law office of Alan Van Praag in the firm Eaton & Van Winkle, 3 Park Avenue, New York, New York, 10016, and an office in Luxembourg.

4. LBI and McRae are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Complaint and on that basis deny the allegations. Further answering, LBI and Mr. McRae state that at the time the contract was formed Zemper International SA ("Zemper") did not hold itself out to have offices in Massachusetts, but rather claimed to have its principal offices in the Bahamas, and an office in Luxembourg.

5. LBI and McRae admit that LBI is a British Columbia company based in Vancouver, British Columbia, Canada and that Leading Brands of America ("LBAI"), LBI's principal operating subsidiary in the United States and Mexico, is a Delaware company. LBI and McRae also admit that LBI, through subsidiaries, including but not limited to LBAI, engages in packaging, distribution, sales, merchandising and brand management of beverage and food products in North America. LBI and McRae also admit that LBAI's principal place of business was located at 880 Canal Street, Stamford, Connecticut until September 30, 2003, but deny that

LBAI was subsequently shut down, that no other offices opened and the remaining allegations contained in this paragraph.

6. Admitted.

## JURISDICTION AND VENUE

7. LBI and McRae deny that personal jurisdiction exists within this judicial district because neither of them had sufficient contacts with this forum to justify requiring them to defend against a lawsuit in this District. LBI and McRae also deny that subject matter jurisdiction exists because the claims raised by the Plaintiffs are subject to a mandatory arbitration provision in the underlying License Agreements between Plaintiffs and LBI's subsidiary and thus the controversy could not exceed the amount necessary to satisfy minimum jurisdictional threshold.

8. LBI and McRae deny that venue is proper in this District.

## COMMON FACTS

9. LBI and McRae admit that LBAI, through its then President Robert Miller ("Miller") engaged in discussions relating to licensing of Mad Croc™ Energy Drink ("Mad Croc"), Red Devil™ ("Red Devil") and a New Sun beverage with Futuristic, Zemper and New Sun, respectively. LBI and McRae deny the remaining allegations contained in this paragraph.

10. LBI and McRae admit that New Sun disclosed information to LBAI about a soyisoflavone ingredient that it was attempting to develop, but are without sufficient information to known whether that information was confidential or proprietary or whether the disclosures were made pursuant to confidentiality agreements, and on that basis deny those allegations. LBI and McRae deny that New Sun disclosed trade confidential and proprietary information about AquaSoy or any other such product as, to the best of the information and belief of LBI and

McRae, such product does not exist. LBI and McRae deny the remaining allegations contained this paragraph.

11.   LBI and McRae admit that LBAI and New Sun entered into a License Agreement ("New Sun License Agreement") dated March 18, 2003. A true and correct copy of that agreement is attached at Tab A.

12.   LBI and McRae admit that LBAI and Futuristic entered into a License Agreement ("Mad Croc License Agreement") dated March 19, 2003. A true and correct copy of that agreement is attached at Tab B.

13.   LBI and McRae admit that LBAI and Zemper entered into a License Agreement ("Red Devil License Agreement") dated March 19, 2003. A true and correct copy of that agreement is attached at Tab C.

14.   LBI and McRae admit that, under the Mad Croc License Agreement, LBAI had the exclusive right to market and distribute Mad Croc in the United States and Canada and that Plaintiff Futuristic nominated DIS, BV ("DIS") as manufacturer of Mad Croc. Other terms of the License Agreement described in this paragraph speak for themselves, and to the extent that the Complaint purports to characterize them, the allegations contained in this paragraph of the Complaint are denied.

15.   Denied. Further answering, LBI and McRae allege that, since inception, LBAI has been in full compliance with the licensing agreements, except when it has been unfeasible, primarily because of Plaintiffs' breaches of their agreements with LBAI. Based on Plaintiffs' improper and unlawful conduct, LBAI has initiated legal claims against the Plaintiffs, which are now pending before, among other places, the American Arbitration Association and the

Massachusetts Superior Court. See LBAI's Answer and Counterclaims, true and correct copies of which are attached at Tabs D and E, respectively.

16. Denied. Further answering, LBI and McRae allege that with regard to LBAI's distribution and sale of Mad Croc, LBAI has sold more than five times the minimum required under the License Agreement and made the product a commercial success despite Futuristic's: (a) failure to provide product in a 16.9 oz. can format; (b) failure to provide product in any format legal for sale in Canada; (c) diversion of shipments of product to LBAI since September, 2003 and failure to make any product available to LBAI for sale thereafter (d) to provide make any product available to LBAI whatsoever that does not infringe the trade dress and intellectual property rights of Red Bull.

17. Denied. Further answering, LBI and McRae allege that the customer provided by Futuristic, 7-Eleven, Inc., brought with it an exclusivity arrangement that dramatically restricted the ability of LBAI to market and distribute Mad Croc to other customers in the United States.

18. Denied.

19. LBI and McRae admit that LBAI closed its Connecticut office. LBI and McRae allege that LBAI did so because the primary employee who worked out of that office, former LBAI President Miller, resigned in August, 2003, and the lease on the Connecticut office expired in September, 2003. LBI and McRae deny that LBAI has functionally ceased to exist. To the contrary, LBAI continues to operate in the United States today. LBAI has several sales representatives and maintains offices where they are located. In addition, LBAI has administrative, accounting and support personnel. LBI and McRae deny the remaining allegations of paragraph 19 of the Complaint.

20. Denied.

21.  Denied. Further answering, LBI and McRae further allege, upon information and belief, the Plaintiffs interfered with LBAI's contractual arrangement with DIS, by inducing DIS to unilaterally impose unreasonable credit terms on LBAI in order to make it appear that LBAI had breached some agreement with DIS. Based on those acts, LBAI has filed legal claims against DIS for conspiracy, which are now pending in the U.S. District Court for the Eastern District of Virginia.

22.  LBI and McRae admit that LBAI initiated certain actions to prevent the wrongful diversion of its goods and that courts in five states issued restraining orders in favor of LBAI. LBI and McRae deny the remaining allegations of paragraph 22 of the Complaint.

23.  Denied.

24.  LBI and McRae admit that Lines threatened to physically harm McRae, an Officer and Director of LBAI, by informing at least two LBAI employees, one of whom memorialized Lines' threats by e-mail, that Lines intended "to cut off Ralph McRae's balls, slice them up into tiny pieces and feed them to him" and Lines added: "I'm serious I will do this." LBI and McRae also admit those threats were reported to law enforcement, which opened an investigation into Lines' conduct. LBI and McRae deny the remaining allegations of paragraph 24 of the Complaint.

25.  Denied.

26.  LBI and McRae deny that LBAI has ceased doing business or has become insolvent and thus deny that the license agreements could be terminated on those grounds. LBI and McRae deny the remaining allegations of paragraph 26 of the Complaint.

27.  LBI and McRae admit that, on or about October 9, 2003, LBAI filed a lawsuit against Futuristic, Zemper, New Sun, Thomas Lines and others in U.S. District Court for the

District of Connecticut. LBI and McRae deny the remaining allegations of paragraph 27 of the Complaint.

28. LBI and McRae admit that by letter dated November 14, 2003, Futuristic purported to terminate the Mad Croc License Agreement because of LBAI's alleged material breaches of that agreement. By letter dated November 25, 2003, a true and correct copy of which is attached at Tab F, LBAI denied there was any factual or legal basis for such a termination, and thus the license agreement remained in effect. LBI and McRae deny the remaining allegations of paragraph 28 of the Complaint.

29. LBI and McRae admit that by letter dated December 18, 2003, New Sun purported to terminate the New Sun License Agreement because of LBAI's alleged material breaches of that agreement. By letter dated January 5, 2004, a true and correct copy of which is attached at Tab G, LBAI denied there was any factual or legal basis for such a termination, and thus the license agreement remained in effect. LBI and McRae deny the remaining allegations of paragraph 29 of the Complaint.

30. LBI and McRae admit that by letter dated March 23, 2004, Zemper purported to terminate the Red Devil License Agreement because of LBAI's alleged material breaches of that agreement. By letter dated April 8, 2004, a true and correct copy of which is attached at Tab H, LBAI denied there was any factual or legal basis for such a termination, and thus the license agreement remained in effect. LBI and McRae deny the remaining allegations of paragraph 30 of the Complaint.

31. LBI and McRae admit that, in violation of LBAI's exclusive rights to distribute the products at issue, the Plaintiffs and others are, and have been, actively pursuing other companies to replace LBAI. Contrary to the Plaintiffs' allegations, those activities did not begin

after the purported termination of LBAI, but in reality much earlier. As early as April, 2003 – only a month after the License Agreements were signed – Futuristic was attempting to take the rights to distribute Mad Croc away, and to give them to Mitsui Bussan Logistics Inc., a distributor through which Futuristic could obtain a larger profit on the sale of Mad Croc. LBI and McRae deny the remaining allegations of paragraph 31 of the Complaint.

32. Denied.

33. LBI and McRae deny that LBAI received copies of the letters attached as Exhibits G to the Complaint prior to June 18, 2004, when the Plaintiffs filed motions for preliminary injunctions with this Court and the Massachusetts Superior Courts. LBI and McRae also disagree with the Plaintiffs' characterization of these letters as "confirmatory termination" letters. The letters purport to terminate the License Agreements under a wholly separate and distinct "non-cause" provision contained in the License Agreements, under which the Plaintiffs are obligated, among other things, to make substantial payments to LBAI. The Plaintiffs' had not invoked that provision at any time prior to then, and thus the letters did not "confirm" anything. LBI and McRae deny the remaining allegations of paragraph 33 of the Complaint.

## CAUSES OF ACTION

### COUNT I
### Tortious Interference with Contractual Relations

34. LBI and McRae incorporate the foregoing paragraphs by reference.

35. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae admit the allegations contained in paragraph 35 of the Complaint.

36. Admitted.

37. Denied.

38. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 38 of the Complaint.

38 [SIC]   Denied.

40.   Denied.

## COUNT II
### Tortious Interference with Contractual Rights

41. LBI and McRae incorporate the foregoing paragraphs by reference.

42. LBI and McRae are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the Complaint and on that basis deny the allegations.

43. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 43 of the Complaint. Further answering, LBI and McRae deny that the email attached to the Complaint demonstrates any interference with any rights.

44.   Denied.

## COUNT III
### Conversion

45. LBI and McRae incorporate the foregoing paragraphs by reference.

46. LBI and McRae state that the terms of the License Agreement speak for themselves, and to the extent that the Plaintiffs' characterize those terms, LBI and McRae deny those characterizations.

47. LBI and McRae admit that Futuristic sought to purchase LBAI's Mad Croc inventory, but deny that Futuristic had the right to purchase that product at that time or that LBAI in any way breached any agreement with Futuristic by refusing to sell the product to it.

48. Denied.

49. Denied.

## COUNT IV
### Conversion

50. LBI and McRae incorporate the foregoing paragraphs by reference.

51. Denied.

52. Denied.

53. Denied.

## COUNT V
### Deceit

54. LBI and McRae incorporate the foregoing paragraphs by reference.

55. LBI and McRae admit that McRae, as an officer of LBAI, has stated the substance of the assertions contained in paragraphs 55(a) to (d), but uncertain if he has done so "repeated[ly]," or if LBI has made the same assertions and on that basis deny the allegations contained in paragraph 55(a) of the Complaint.

56. This paragraph restates allegations contained in paragraph 24 of the Complaint. LBI and McRae incorporate by reference their response to that paragraph.

57. LBI and McRae admit that LBAI paid all invoices to DIS when due and owing, but lack sufficient information to know whether the unidentified statement quoted from the unidentified affidavit attributes the payment to LBI or LBAI, and on that basis deny the allegations contained in the Complaint at this time.

58. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 58 of the Complaint.

59. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 59 of the Complaint.

60. Denied.

61. Denied.

62. LBI and McRae are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 62 of the Complaint and on that basis deny the allegations.

63. Denied.

### COUNT VI
### Conversion/Trade Secrets

64. LBI and McRae incorporate the foregoing paragraphs by reference.

65. This paragraph restates allegations contained in paragraph 10 of the Complaint. LBI and McRae incorporate by reference their response to that paragraph.

66. This paragraph restates allegations contained in paragraph 10 of the Complaint. LBI and McRae incorporate by reference their response to that paragraph.

67. Denied.

68. Denied.

### COUNT VII
### Tortious Interference with Contractual Relations

69. LBI and McRae incorporate the foregoing paragraphs by reference.

70. This paragraph restates allegations contained in paragraph 10 of the Complaint. LBI and McRae incorporate by reference their response to that paragraph.

71. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 71 of the Complaint.

71 [SIC] This paragraph restates allegations contained in paragraph 10 of the Complaint. LBI and McRae incorporate by reference their response to that paragraph.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

### COUNT VIII
### Conspiracy

77. LBI and McRae incorporate the foregoing paragraphs by reference.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

### COUNT IX
### Declaratory Judgment – Piercing the Corporate Veil

82. LBI and McRae incorporate the foregoing paragraphs by reference.

83. Admitted.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

88. Denied.

89. Denied.

90. Denied.

91. Denied.

92. Denied.

93. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 93 of the Complaint.

94. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 94 of the Complaint.

## COUNT X
### Breach of Contact – Piercing the Corporate Veil

96 [SIC]   LBI and McRae incorporate the foregoing paragraphs.

97. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 97 of the Complaint.

98. LBI and McRae state that the allegations in this paragraph constitute a legal conclusion, to which no response is required. To the extent a response is deemed to be required, LBI and McRae deny the allegations contained in paragraph 98 of the Complaint.

99. Denied.

## PRAYER FOR RELIEF

Plaintiffs' prayer for relief contains no factual assertions to which a response is required. To the extent that the prayer for relief may be deemed to require a response, it is denied.

## SECOND DEFENSE

LBAI denies all allegations contained in the Complaint (including headings and captions) not specifically admitted in this Answer.

## THIRD DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## FOURTH DEFENSE

Plaintiffs are not entitled to any relief in light of their material breaches of the License Agreements.

## FIFTH DEFENSE

Plaintiffs' claims are barred by the doctrines of laches and unclean hands.

## SIXTH DEFENSE

Plaintiffs' claims are barred because plaintiffs have not suffered any injury in fact.

## SEVENTH DEFENSE

Plaintiffs' alleged harm, if any, was the result of the conduct of third parties for which LBI and McRae are not responsible.

## EIGHTH DEFENSE

Plaintiffs' alleged harm, if any, was the result of plaintiffs' own conduct, for which LBAI is not responsible.

## NINTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

### TENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the doctrine of waiver.

### ELEVENTH DEFENSE

Plaintiffs are barred from obtaining a recovery in equity due to their own inequitable and unfair conduct.

### TWELFTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, by their own material breaches of their contractual obligations and obligations of good faith and fair dealing owed to LBAI.

### THIRTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because LBAI always conducted itself in accordance with its contractual obligations owed to plaintiffs, or was excused therefrom by plaintiffs' own conduct.

### FOURTEENTH DEFENSE

Plaintiffs' Complaint is barred because they have failed to exhaust all administrative or contractual remedies prior to bringing or prosecuting this action.

### FIFTEENTH DEFENSE

Plaintiffs' Complaint is barred by its failure to perform an essential condition precedent, prior to LBAI's performance under the License Agreements.

### SIXTEENTH DEFENSE

There is no jurisdiction in this Court for the matters alleged in the Complaint, as none of those actions complained, even if proven, took place by these Defendants in the United States.

## SEVENTEENTH DEFENSE

At all times relative to the matters in the Complaint, Defendant McRae was acting in his corporate capacity as an officer of LBAI and is not personally liable for the events complained of.

## RESERVATION OF DEFENSES

LBI and McRae reserve the right to assert additional defenses when they determine the particulars of plaintiffs' claims, which are not apparent on the face of the Complaint.

**Defendants claim a trial by jury.**

Respectfully submitted,

LEADING BRANDS, INC.
RALPH D. MCRAE

By their attorneys,

*/s/ Michael A. Collora*
Michael A. Collora (BBO No. 092940)
Michael B. Galvin (BBO No. 630515)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, Massachusetts 02210-2211
Tel: 617-371-1000
Fax 617-371-1037

Dated: June 28, 2004

## Certificate of Service

I, Michael A. Collora, Esq., do hereby certify that I have hand delivered a copy of the Answer and Jury Claim of Defendants Leading Brands, Inc. and Ralph McRae upon Evan Slavitt, Esq., of Bodoff & Slavitt, LLP, 225 Friend St., 7th Floor, Boston, MA 02114, on this, the 28th day of June, 2004.

_____
Michael A. Collora