UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FUTURISTIC BRANDS USA, INC.,
NEW SUN BEVERAGES CORPORATION
(USA), INC. and ZEMPER INTERNATIONAL
SA

       Plaintiffs,

    v.

LEADING BRANDS, INC. and RALPH
MCRAE

       Defendants.

Civil Action No. 04-CV-10303-RWZ

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

In their Motion for a Temporary Restraining Order and Preliminary Injunction, the

Plaintiffs seek to circumvent the Honorable Margot Botsford's recent Order *denying* the

Plaintiffs that very same relief.  This Court should not permit that.  First, because of the identical

facts and legal issues before both courts, the Plaintiffs are now collaterally estopped from

obtaining relief from this Court.  To the extent the Plaintiffs want reconsideration or clarification

of Judge Botsford's ruling, the proper way to obtain review is, of course, through Judge

Botsford's court, not this one.  Second, even if the prior ruling somehow does not preclude the

Plaintiffs' from obtaining the same relief from this Court, the Plaintiffs still are not entitled to it.

As before, they have wholly failed to demonstrate a likelihood of success on the merits or a risk

of irreparable harm.  All of the supposedly "new facts" the Plaintiffs point to were before Judge

Botsford and, in any event, do not warrant injunctive relief.

**CONCLUSION**

For each of these reasons, Defendants LBI and McRae respectfully request that this Court deny Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

LEADING BRANDS, INC.
RALPH D. MCRAE

By their attorneys,

Michael A. Collora (BBO No. 092940)
Michael B. Galvin (BBO No. 630515)
DWYER & COLLORA, LLP
600 Atlantic Avenue
Boston, Massachusetts 02210-2211
Tel: 617-371-1000
Fax 617-371-1037

Dated: July 2, 2004

**CERTIFICATE OF SERVICE**

I, Michael B. Galvin, Esq., do hereby certify that I have caused to be hand delivered a copy of the foregoing document to Evan Slavitt, Esq., of Bodoff & Slavitt, LLP, 225 Friend St., 7th Floor, Boston, MA 02114, on this, the 2d day of July, 2004.

Michael B. Galvin

## ARGUMENT

### 1.   Plaintiffs Are Collaterally Estopped From Obtaining the "Second Chance" Relief They Seek From This Court.

On June 18, 2004, the same day they filed the Injunction Motion with this Court, the Plaintiffs also filed duplicative materials seeking essentially the same relief in Futuristic Brands USA, Inc. et al. v. Leading Brands of America, Inc., No. 04-1753-BLS2 (Botsford, J.), a parallel action the Plaintiffs initiated against LBI's American subsidiary in Suffolk Superior Court. Copies of the Plaintiffs' filings in that court are attached at Tab A. At the Plaintiffs' request, Judge Botsford scheduled a hearing on the injunction motion on short order, just two business days later on June 22, 2004. Prior to that hearing, LBAI submitted an opposition and supporting materials, copies of which are attached at Tab B.

On June 22, 2004, Judge Botsford held a hearing on that motion. In argument to Judge Botsford, counsel for the Plaintiffs made the same points he makes in filings submitted to this Court, including his assertion that Ari Koivula had been "threatened" and "interfered with" by LBAI's legal counsel after LBAI received the Plaintiffs' notices of termination without cause. See Affidavit of Michael B. Galvin, Esq. ("Galvin Aff.,") filed herewith, ¶ 4. After hearing arguments and questioning counsel, Judge Botsford took the motion under advisement. Id., ¶ 5.

On June 23, 2004, counsel for the Plaintiffs filed with Judge Botsford a supplemental affidavit from Koivula, which is the same document they filed in their supplemental filing with this Court. By notice "sent" on June 23, 2004, and received by counsel for LBI and McRae on June 24, 2004, Judge Botsford denied the Plaintiffs' State Injunction Motion without prejudice, noting she "was not persuaded there was a showing of interference that would warrant injunctive relief." See Order, attached at Ex. D to Plaintiffs' Motion to Supplement Materials. Judge Botsford did not indicate, one way or the other, whether the Plaintiffs had satisfied their burden

days before Powers received Zemper's notice of termination. Powers Aff., ¶¶ 4, 6.

The only evidence that the Plaintiffs rely upon to contest any of this is Koivula's remarkably (and undoubtedly intentionally) vague assertion that his call with Powers occurred "[a]t some point in or about June, 9-11, 2004." See Koivula Aff., ¶ 3. That statement is not necessarily inconsistent with Powers' unequivocal statement that the call took place on June 8, 2004. Even crediting Koivula's extremely shaky version of the facts, the call still occurred at least week before Powers received the Zemper notice. Powers Aff., ¶ 6. Koivula does not claim that he ever mentioned or asked Powers about the effect of the "without cause" notice. Given that their conversation began on June 3, 2004 and concerned LBAI's interest distributing product in the United States, it would not make sense for them to discuss that issue.

Contrary to Plaintiffs' assertions, nothing contained Koivula's affidavit – or in any other evidence before this Court – reflects LBAI taking *any* position to third parties with respect to its legal rights after the notices of termination without cause. Thus, the record with respect to alleged harm is no different than it was when Judge Botsford heard this matter on June 22, 2004. There is no basis for ruling any differently than Judge Botsford.

with respect to the other elements. Id.

Judge Botsford's Order collaterally estops the Plaintiffs from obtaining the relief they now seek from this Court. "The doctrine of collateral estoppel is designed to prevent duplicate litigation of the same issue because such litigation is a burden on the litigants and wastes judicial resources." Lykes Bros. Steamship Co. v. General Dynamics Corp., 512 F. Supp. 1266, 1269 (D. Mass. 1981) (Zobel, J.). It may be applied whenever there is "an identity of issues, a finding adverse to the party against whom it is being asserted, and a judgment by a court or tribunal of competent jurisdiction." Meltzer v. Epstein, Becker & Green, P.C., 233 F. Supp.2d 213, 217 (D. Mass. 2002) (quoting Kyricopoulos v. Town of Orleans, 967 F.2d 14, 16 (1st Cir. 1992)). See also Lykes Bros. Steamship Co., 512 F. Supp. at 1269 (discussing standard).

Here, each of those elements is clearly satisfied. First, there is a complete identity of issues, given that Massachusetts Rule of Civil Procedure 65 mirrors Federal Rule of Civil Procedure 65 (see Mass. R. Civ. P. 65, Reporter's Notes (1973) ("Rule 65 is taken with little change from Federal Rule 65")), a fact the Plaintiffs cannot contest given their identical filings in both courts. Second, Judge Botsford's decision to deny Plaintiffs' motion plainly constitutes a ruling "adverse" to the Plaintiffs, who are the same parties before Judge Botsford. Third, Judge Botsford's ruling constitutes a "judgment by a court ... of competent tribunal." Courts have routinely applied collateral estoppel to preclude successive rulings on motions for preliminary injunction. See, e.g., Hayes v. Ridge, 946 F. Supp. 354, 363-67 (E.D. Pa. 1996) (state court decision denying preliminary injunction collaterally estopped plaintiffs from pursuing preliminary injunctive relief on same issue in federal court); Lyon Ford, Inc. v. Ford Marketing Corp., 337 F. Supp. 691, 695 (E.D.N.Y. 1971) (same). See also 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure (2d ed.) § 4445 (Collateral

Even if the Plaintiffs could obtain equitable relief on an un-pleaded theory, the evidence before this Court simply does not support their assertions that sometime *after* the receipt of those notices, LBAI or its legal counsel has taken *any* position to any third party with respect to the ongoing effect of the License Agreements. The single piece of evidence that the Plaintiffs now point to as proof that LBAI made such statements – the Koivula affidavit -- simply does not prove that. See Plaintiffs' Motion to File Supplemental Materials at 2 (claiming affidavit "directly contradict[s] LBAI's assertion that it had not threatened to interfere with the sale or re-licensing of plaintiffs' brands" after receipt of the notices of termination). If anything, Koivula's affidavit confirms that his conversations with counsel for LBAI occurred *before* the Plaintiffs changed theories of termination, when even the Plaintiffs do not dispute that LBAI had the legal right to take that position.

Koivula initiated the telephone calls with LBAI and did so on or before June 3, 2004, more than *two weeks before* LBAI's counsel received the notice of termination without cause from Zemper International SA ("Zemper"). See Affidavit of Timothy E. Powers ("Powers Aff."), filed herewith, ¶ 2, 6. During the June 3, 2004 call, Koivula informed Powers that he had acquired the rights from Zemper, one of the Plaintiffs in this case, to distribute Red Devil™ ("Red Devil") Energy Drink, one of the products covered by one of the License Agreements, and wanted to know if LBAI would be interested in distributing that product in the United States. Powers Aff., ¶¶ 2-3. On June 8, 2004 – ten days before Powers' receipt of Zemper's notice – Powers spoke again with Koivula and accurately informed him that LBAI's position was that LBAI was the exclusive licensee of the rights to distribute Red Devil in the United States under the License Agreement dated March 19, 2003, and that LBAI would defend those rights by pursuing legal remedies available to it. Powers Aff., ¶ 4. Again, that conversation took place ten

estoppel "may properly be applied [to successive motions for preliminary injunctions] ... if the same showings are made and it appears that nothing more is involved than an effort to invoke a second discretionary balancing of the same interests.").

The Plaintiffs cannot dodge collateral estoppel by claiming, as they do, that it is "unlikely," in their view, that Judge Botsford considered Koivula's affidavit, or that Judge Botsford "would [have] granted the injunctive relief," had she simply done so. See Plaintiffs' Supplemental Filing at 2-3. That is pure speculation on their part. Moreover, the Plaintiffs' actions speak louder than their words: if they were so sure Judge Botsford would have ruled in their favor, they could have requested reconsideration or clarification from her (particularly given she ruled without prejudice), and not insisted that this Court improperly second guess Judge Botsford.[1]

### 2.    Plaintiffs Have Failed to Satisfy Their Burden of Proof.

#### A.    No Likelihood of Success on the Merits

Even if the Plaintiffs were not precluded from again seeking the same injunctive relief, they still should not receive it because they have not demonstrated, among other things, a likelihood of success on the merits of their claim. Indeed, the Plaintiffs have yet to plead their novel and unspecified theory of termination without cause in this case or in any of the other related actions. Instead, the Plaintiffs' theory in each of those cases is predicated on an entirely different theory of their termination of the License Agreements *with cause*. See, e.g., Plaintiffs' Amended Complaint, ¶¶ 15-26 (describing LBAI's alleged material breaches of Agreements), ¶¶

---

[1] Prior to filing this Opposition, counsel for LBI and McRae requested that, in view of Judge Botsford's ruling, the Plaintiffs withdraw their Motion for a Temporary Restraining Order and Preliminary Injunction filed with this Court. Counsel for the Plaintiffs refused that request. See Galvin Aff., ¶¶ 6-7.

LBAI to interfere with the Plaintiffs' efforts to "re-license" their products for distribution in the United States through distributors other than LBAI. They claim that LBAI has done that through "threatening" or "intimidating" statements from LBAI's legal counsel that LBAI believes that it retains the exclusive rights to distribute those products under the terms of the License Agreements, and that it will seek to protect its rights by taking appropriate legal actions against other distributors who violate LBAI's rights. See Plaintiffs' Memo. in Support of Injunction Relief at 1, 3; Plaintiffs' Supplemental Filing at 2-3.

However, even the Plaintiffs do not dispute that LBAI had the right to make such statements until very recently. As noted above, the Plaintiffs' theory in this and every other case had been that LBAI had materially breached numerous obligations under the License Agreements, and thus the Plaintiffs were entitled to terminate the License Agreements under "for cause" termination provisions. Throughout this period, LBAI's uniform and unremarkable response has been, and continues to be, that LBAI did not breach any of its duties or obligations under any of the License Agreements, and therefore those Agreements remain in effect.

It was not until the Plaintiffs very recent resort to an *entirely different* theory of termination – one *not* predicated on a termination "for cause," but instead a termination without cause – that the Plaintiffs now contend that LBAI somehow instantly lost the right to contest the termination of the License Agreements. See Plaintiffs' Memo. in Support of Motion for Injunctive Relief at 3; Plaintiffs' Supplemental Filing at 2-3. The Plaintiffs take that astonishing stance despite their failure to amend their pleading to this Court, the state court or the arbitration panel alleging that "non-cause" theory of termination and based solely on notices of termination that Plaintiffs suggest they mailed sometime in mid-June, 2004. See Slavitts Affidavit, attached to Tab A, at 2 (suggesting notices were mailed on June 11, 2004).

28-30 (describing Plaintiffs' notices of termination based on LBAI's alleged material breaches of Agreements). The Plaintiffs – despite numerous filings in this and other Courts lately – have chosen *not* to seek leave to amend their pleadings to raise this different theory of relief. Unless and until they successfully plead this new theory, it is entirely speculative to claim, let alone prove, a likelihood of success on it.

No doubt explaining their aversion to plead their new theory, there are several readily apparent and seemingly insurmountable hurdles with respect to it. First, under the plain language of each License Agreement, there is an obvious condition precedent to the Plaintiffs' ability to terminate the Agreements without cause that the Plaintiffs have not fulfilled: their own performance under the contract. For example, to calculate a severance payment under this provision, the Plaintiff must produce product to LBAI within the preceding twelve-month period. See New Sun License Agreement, ¶ 21.3; Mad Croc License Agreement, ¶ 15.3 and Red Devil License Agreement, ¶ 15.3.[2] The Plaintiff failed to do that. They did not produce any product whatsoever under the New Sun License Agreement; the critical 16.9 oz products under the Red Devil License Agreement and various products under the Mad Croc License Agreement. See Affidavit of Ralph McRae, attached at Tab B, ¶ 95. The Plaintiffs' failure to abide by those

---

[2] For instance, the New Sun Agreement, in pertinent part, states:

> Notwithstanding anything herein to the contrary, should NEW SUN ... terminate this Agreement without cause ... then ... *NEW SUN ... shall be liable to pay to [LBAI] a severance payment ... in full and final settlement of all claims arising out of or in connection with this Agreement in any way whatsoever by [LBAI] ... against NEW SUN of USD 4 (four U.S. dollars) per Case ... of Licensed Products sold by Licensee ... during the most recently completed twelve (12) month period* ending on the last day of the month preceding the month in which the Agreement is terminated.

New Sun License Agreement, ¶ 21.3 (emphasis added).

conditions will preclude them from now invoking the termination without cause provision against LBAI.

Second, LBAI will likely dispute the enforceability of the non-cause termination provision because it appears to have been procured by fraud and in bad faith. That provision was negotiated exclusively by former LBAI President Robert Miller, against whom LBAI has filed a lawsuit alleging, among other things, that he acted fraudulently by inserting other terms into these Agreements that were without LBAI's approval, against its interests and instead decidedly favored the Plaintiffs and their principal, Thomas Lines. LBAI's initial review of the "non-cause" termination provisions shows that they are different from what Miller was instructed to negotiate. See McRae Aff., ¶¶ 18-21. Justice, as well as Rules of Procedure, require that LBAI be permitted time to further review and to take discovery about that and potentially other defenses to the Plaintiffs' novel and yet-untested theory.

Third, the Plaintiffs seek injunctive relief in this case against the wrong parties – LBI and McRae, who were not even parties to the License Agreements. LBAI – the real party in interest with respect to the License Agreements – is not before this Court because the Plaintiffs' claims are precluded by the mandatory arbitration provision in the License Agreements. It would be inequitable and incorrect for this Court to enter the requested relief against those who were not even parties to the License Agreements, especially where Judge Botsford has already refused to order such relief in the case involving LBAI.

### B.    No Risk of Irreparable Harm

Even if the Plaintiffs could show a likelihood of success (which they cannot), they still have failed to prove a substantial risk of irreparable harm. In their filings with Judge Botsford and this Court, the alleged harm the Plaintiffs identify is the supposedly ongoing attempts by